<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HIRIAM RANGEL, | Case No.:  2:16-cv-02900 (PAZ) |
| Plaintiff, | **OPINION** |
| v. | |
| NANCY A. BERRYHILL, | |
| Defendant. | |

**APPEARANCES:**

JOHN J. RACHINSKY
KICZEK & RACHINSKY, LLC
25 WEST 8TH STREET
BAYONNE, NJ  07002
         On behalf of Plaintiff

PATRICIA ANNE STEWART
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET
PHILADELPHIA, PA  19123
         On behalf of Defendant

**PAUL A. ZOSS, United States Magistrate Judge.**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act,

as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Hiriam Rangel for

Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (42 U.S.C. §§ 401,

et seq.) and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (42

U.S.C. §§ 1381, et seq.).  Plaintiff appeals from the final decision of the Administrative Law Judge

("ALJ") denying the applications; Defendant, the Commissioner of Social Security ("the

Commissioner"), opposes Plaintiff's appeal.[1]  After careful consideration of the record, including the ALJ hearing transcripts, the ALJ's decision, and the pleadings and memoranda of the parties, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f).  For the reasons set forth below, the Court affirms the Commissioner's decision that Plaintiff was not disabled.

## I.    PROCEDURAL HISTORY

On May 31, 2012, Plaintiff filed applications for DIB and SSI alleging a disability onset date of September 1, 2011.  (R. 167-74.)[2]  On November 13, 2012, the Commissioner determined that Plaintiff was not disabled and denied the applications.  (R. 112-17.)  Plaintiff filed for reconsideration, and her applications were again denied on July 22, 2013.  (R. 122-27.)  On October 16, 2014, an Administrative Law Judge held a hearing on Plaintiff's application; Plaintiff was represented by counsel at the hearing.  (R. 32-55.)  During the hearing, Plaintiff amended her alleged onset date to May 25, 2012.  (R. 53.)  On December 16, 2014, the ALJ issued a decision denying Plaintiff's applications.  (R. 13-31.)  On March 22, 2016, the Appeals Council denied Plaintiff's request for appeal (R. 1-8), thereby affirming the ALJ's decision as the "final" decision of the Commissioner.

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security.  On March 6, 2018, the Government Accountability Office stated that, as of November 17, 2017, Ms. Berryhill's status violated the Federal Vacancies Reform Act, which limits the time a position can be filled by an acting official and "[t]herefore Ms. Berryhill was not authorized to continue serving using the title of Acting Commissioner[.]"  *Violation of the Time Limit Imposed by the Federal Vacancies Reform Act of 1988 Commissioner*, Social Security Administration, Government Accountability Office (Mar. 6, 2018).  However, Ms. Berryhill continues to functionally lead the Social Security Administration from her position of record as Deputy Commissioner of Operations.  Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the defendant in this suit.

[2] "R." refers to the continuous pagination of the administrative record.  *See* ECF No. 5.

On May 20, 2016, Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g) and pursuant to 42 U.S.C. § 1383(c)(3). ECF No. 1. On June 29, 2018, the case was reassigned to the undersigned U.S. Magistrate Judge. On July 2, 2018, Plaintiff consented to have the undersigned conduct all further proceedings in the case to disposition pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 11.[3]

## II.    LEGAL STANDARD

### A.    <u>Standard of Review</u>

This Court has plenary review of legal issues decided by the ALJ in reviewing applications for DIB and SSI. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g) & 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 (JLL), 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential one, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*,

---

[3] Defendant has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484 (RBK), 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Coleman*, 2016 WL 4212102 at *3 (citing *Schonewolf*, 972 F. Supp. at 284-85) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978))).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984)). Remand is also appropriate if the ALJ's findings are not the product of a

complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See, e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

### B.    Standard for Awarding Benefits

Under the Social Security Act, an adult claimant (i.e., a person over the age of eighteen) is disabled and eligible for DIB or SSI based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 20 C.F.R. §§ 404.1505(a), 416.905(a).[4] An impairment is "medically determinable" if it results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Thus, an impairment must be established by objective medical evidence from an

---

[4] Although the standards for disability are the same for both DIB and SSI, these are separate government programs subject different qualification requirements.

acceptable medical source and cannot be established by a statement of symptoms, a diagnosis, or a medical opinion. *Id*. §§ 404.1521, 416.921.

The process for determining an adult's claim for DIB or SSI involves a five-step sequential inquiry. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a).[5] The claimant bears the burden of proof at Steps One through Four. At Step Five, the burden shifts to the Commissioner. *Id*. §§ 404.1512, 416.912; *see Holley v. Colvin*, 975 F. Supp.2d 467, 476-77 (D.N.J. 2013), *aff'd sub nom. Holley v. Comm'r of Soc. Sec.*, 590 F. App'x 167 (3d Cir. 2014). At each Step, the ALJ must consider the combined effect of all the claimant's physical and mental impairments without regard to whether any single impairment, if considered separately, would be of sufficient severity to proceed to the next Step. 20 C.F.R. §§ 404.1523(c), 416.923(c).

At Step One, the ALJ decides whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity is work activity that involves doing significant physical or mental activities and is usually done for pay or profit. *Id*. §§ 404.1572(a) & (b), 416.972(a) & (b). If the claimant is engaging in such activity, then the inquiry ends because the claimant is not disabled.

"The [Step Two] inquiry is a de minimis screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). At this Step, the ALJ decides whether the claimant has a medically determinable impairment or a combination of such impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is severe if it significantly limits a claimant's ability to perform basic work activities. An impairment or combination of impairments is not severe if the claimant has a slight

---

[5] This case arises from a claim filed before March 27, 2017 and is therefore analyzed by this Court – as it was by the ALJ – under 20 C.F.R. §§ 404.1527 and 416.92.

abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations. *Id*. §§ 404.1522, 416.922. If the claimant does not have a severe impairment or combination of impairments, then the inquiry ends because the claimant is not disabled.

At Step Three, the ALJ decides whether the claimant's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment(s) in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's specific impairment is not listed, the ALJ will consider the most closely analogous listed impairment for purposes of deciding medical equivalence. *Id*. §§ 404.1526(b)(2), 416.926(b)(2). If the claimant has an impairment or combination of impairments that meets or medically equals a Listing, then the claimant is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. §§ 404.1509, 416.909.

At Step Four, the ALJ must determine the claimant's residual functional capacity ("RFC"), determine the physical and mental demands of the claimant's past relevant work, and determine whether claimant has the level of capability needed to perform past relevant work. 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). RFC is the claimant's maximum remaining ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. Past relevant work is work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the disability date. In addition, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. *Id*. §§ 404.1560, 404.1565, 416.945, 416.960. If the claimant's RFC enables her/him to perform past relevant work, then the claimant is not disabled.

At Step Five, the ALJ must decide whether the claimant, considering her/his RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(g), 416.920(g).  If the claimant is incapable of doing so, then s/he is presumed to be disabled if her/his impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.  Otherwise, the claimant is not disabled.

In deciding the claimant's ability to perform other jobs that exist in significant numbers in the national economy, the ALJ must consider whether the claimant's impairment and symptoms result in exertional and/or non-exertional limitations.  The classification of a limitation as exertional is related to the United States Department of Labor's classification of jobs by various exertion levels (sedentary, light, medium, heavy, and very heavy) in terms of the strength demands for sitting, standing, walking, lifting, carrying, pushing, and pulling.  *Id*. at §§ 404.1569a(a) & (b), 416.969a(b).  Non-exertional limitations affect a claimant's ability to meet all other demands of a job (i.e., non-strength demands), including but not limited to difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching.  *Id*. §§ 404.1569a(c), 416.969a(c).

If the claimant has no non-exertional limitations and can perform all or substantially all exertion demands at a given level, then the ALJ must use the Medical-Vocational Rules (also referred to as "Grid Rules") found at 20 C.F.R. § 404, Subpart P, Appendix 2.  20 C.F.R. §§ 404.1569a(b), 416.969a(b).  The Grid Rules reflect various combinations of RFC, age, education, and work experience and direct a finding of disabled or not disabled for each combination.  If the claimant also has any non-exertional limitations or cannot perform substantially all the exertional demands at a given level, then the Grid Rules are used as a

framework for decision-making unless there is a rule that directs a conclusion of disabled without considering the additional non-exertional or exertional limitations. *Id*. §§ 404.1569a(d), 416.969a(d).    If the claimant has solely non-exertional limitations, then the Grid Rules provide a framework for decision-making. *Id*. §§ 404.1569a(c), 416.969a(c).

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was fifty years old on her amended alleged onset date (May 25, 2012).  (R. 26.) At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date.  (R. 18.)  At Step Two, the ALJ found that Plaintiff had the following severe impairments:  disorders of the back, asthma, migraine headaches, and an affective disorder. (R. 18.)  At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any Listing.  (R. 19-20.)  At Step Four, the ALJ found that Plaintiff had the residual functional capacity to perform light work except that she "cannot tolerate exposure to pulmonary irritants or hot/cold temperature extremes; she will be off task 10% of the workday; and she can perform simple, routine and repetitive unskilled work."  (R. 20.)  The ALJ also found at Step Four that Plaintiff was unable to perform her past relevant work as a janitor or worker/attendant.  (R. 26.)  At Step Five, the ALJ found that a finding of not disabled would be directed by Grid Rule 202.13 if Plaintiff had the RFC to perform the full range of light work.  The ALJ also found at Step Five that certain jobs – labeler, produce weigher, and bagger – existed in significant numbers in national econmy for an individual with Plaintiff's age, education, work experience, and RFC.  (R. 26-27.)  The ALJ therefore concluded that Plaintiff was not disabled at any time between the alleged onset date) and the decision date.  (R. 27.)

Plaintiff contends that the ALJ's decision should be reversed and remanded under Sentence Six of 42 U.S.C. § 405(g) based on additional evidence relating to Plaintiff's alleged neck, back, hand, and shoulder impairments that was not before the ALJ but was considered by the Appeals Council. Plaintiff also contends that the decision should be reversed and remanded under Sentence Four of 42 U.S.C. § 405(g) because the ALJ erred by failing to develop the record as to Plaintiff's alleged spine impairments. Defendant contends that the decision should be affirmed in its entirety both because Plaintiff does not meet the standards for introducing additional evidence and because substantial evidence supported the ALJ's decision.[6]

## IV.    SCOPE OF EVIDENCE

The medical evidence in the record before the ALJ comprised 205 pages relating to the period between April 2010 and September 2014: 146 pages from treating providers (R. 239-335, 349-97); 13 pages from consultative examiners; (R. 336-48); and 46 pages from State Agency reviewing consultants (R. 63-73, 75-85, 87-98, 100-11).

On March 22, 2016, the Appeals Council denied Plaintiff's request for review of the ALJ's decision and advised:

---

[6] Defendant mistakenly asserts:

> Plaintiff raises only one issue. Plaintiff does not specifically challenge the ALJ's decision that she has not been under a disability, within the meaning of the Social Security Act ("Act"), from May 25, 2012, her [amended] alleged disability onset date, through December 16, 2014, the date of the ALJ's decision. Instead, Plainniff challenges the Appeals Council's determination that the evidence that Plaintiff submitted with her request for review of the ALJ's decision, did not provide a basis for changing the ALJ's decision. By not challenging the ALJ's decision, Plaintiff concedes that substantial evidence supports the ALJ's findings based upon the record before him  The Appeals Council considered the record and applied the correct law, and substantial evidence supports this decision.

ECF No. 9 at 5. Plaintiff's brief clearly argues that remand is warranted regardless of the additional evidence submitted to the Appeals Council. *See* ECF No. 8, Table of Contents (Point Two and Point Three); *id*. at 5 (invoking "sixth sentence of 42 U.S.C. Section 405(g)"); *id*. at 13 (invoking "fourth sentence of 42 U.S.C. Section 405(g)").

[W]e considered the additional evidence listed on the enclosed Order of Appeals Council with the entire record. We considered whether the Administrative Law Judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record. We conclude that the additional evidence does not provide a basis for changing the Administrative Law Judge's decision.

(R. 1-2.) The additional evidence considered by the Appeals Council comprised 655 pages – more than triple the amount before the ALJ – that preceded Plaintiff's initial amended alleged onset date of May 25, 2012 and:

- Exhibit 17F:  Medical records with cover page entitled *Exhibit One, 1989-1991, Right Ankle Injury* (R. 399-463).

- Exhibit 18F:  Medical records with cover page entitled *Exhibit Two, 1992, Motor Vehicle Accident, Neck & Back* (R 465-470).

- Exhibit 19F:  Medical records with cover page entitled *Exhibit Three, 1997, Work Related Injury, Left Shoulder* (R. 472-548).

- Exhibit 20F:  Medical records with cover page entitled *Exhibit Five, 2000, Records of Dr. Ralph Sweeney, Trinitas Hospital* (R. 550-627).

- Exhibit 21F:  Medical records with cover page entitled *Exhibit Four, Lumbar MRIs, March 8, 1998, October 25, 1999* (R. 629-31).

- Exhibit 22F:  Medical records with cover page entitled *Exhibit Six, 2000, Right Ankle Injury, Cervical Herniated Disc C6-C7, Lumbar Bulging Discs, Navicular Cyst, Records of Edison Metuchen Orthopedic Group, Records of Union County Orthopedic Group* (R. 633-780).

- Exhibit 23F:  Medical records with cover page entitled *Exhibit Seven, July 11, 2006, Electrodiagnostic Report of Dr. Kim* (R. 782-85).

- Exhibit 24F:  Medical records with cover page entitled *Exhibit Eight, Dr. Weber's Treating Records including lumbar MRI report dated June 27, 2007, cervical MRI report dated August 6, 2007* (R. 787-987).

- Exhibit 25F:  Medical records with cover page entitled *Exhibit Nine, Right Shoulder and Arm, Work Related Accident November 17, 2007, including Operative report of Dr. Barmakian, Narrative report of Dr. Kulkarni, Electrodiagnostic report of Dr. Diamond, Columbia Pain Management Records* (R. 989-1048).

- Exhibit 26F:  Medical records with cover page entitled *Exhibit Ten, Cervical MRI dated July 26, 2009* (R. 1049-52).

Plaintiff contends that remand is required under Sentence Six of 42 U.S.C. § 405(g) for the

ALJ to consider a 22-page subset of the additional evidence considered by the Appeals Council.

ECF No. 8 at 7 (referencing this subset as "new evidence consist[ing] of diagnostic films and

treatment records regarding Plaintiff's neck, back, hand and shoulders"); *see id*. at 8, 12 (both

citing same subset).  The subset corresponds to 11 documents spread over 9 exhibits to a supporting

certification submitted by Plaintiff's counsel:

- Operative report of Dr. Arthur Canario (orthopedic surgeon) dated August 20, 1997 for decompressive arthroplasty, resection of the subacromial bursa of the left shoulder.  (R. 473).

- Lumbosacral spine MRI report dated October 25, 1999 revealing "mild disc bulge with disc desiccation but without neural compression, associated with active endplate changes at the L4 level.  These changes may be symptom producing."  (R. 631.)

- Electrodiagnostic study by Dr. Okja K. Kim (physiatrist) dated July 11, 2006 revealing:  chronic right L5 radiculopathy; and no evidence of large fiber polyneuropathy, tarsal tunnel syndrome, or common peroneal nerve palsy on tested right lower limb.  (R. 783-85).

- Cervical spine X-ray report dated May 3, 2007 revealing degenerative disc disease C6-C7.  (R. 967).

- Lumbar MRI report dated June 27, 2007 revealing:  minimal noncompressive disc bulge, L2-L3; and "[d]isc bulges, L3-L4 and L4-L5 with facet prominence, thecal sac indentation precursor to central stenosis.  Active endplate changes are seen at the L4-L5 level particularly on the left side and may produce local symptoms. Some left foraminal disc extension is also seen at this level and at L3-L4 bilaterally."  (R. 792-93).

- Electrodiagnostic study by Dr. Martin Diamond (neuromusculoskeletal medicine) dated February 15, 2008 revealing:  as to motor nerve conductions, distal latencies, conduction velocities, amplitudes, and F-waves were normal; as to sensory conductions, all latencies and amplitudes were normal; and, as to electromyography, no evidence of increased insertional activity or rest potentials, normal motor unit morphology and recruitment, and normal muscle testing.  (R. 1001-04).

- Lumbar MRI report dated May 7, 2008 revealing "[d]iffuse bulging at L3-L4 and L4-L5 disc" and "[d]iscogenic changes at the L4-L5 level."  (R. 790-91.)

13

- Cervical spine MRI report dated May 7, 2008 revealing: "[a]nterior and posterior protruded disc herniations with adjacent spondylitic change at the C6-C7 level;" and "[S]chmorl's node involving super articular plate at the C7 vertebral body." (R. 788-89).

- Operative report by Dr. Joseph Barmakian (orthopedic surgeon) dated June 3, 2008 for right carpal tunnel release and release of first dorsal compartment on right wrist for de Quervain tendinitis. (R. 690-91).

- Cervical spine MRI report dated July 26, 2009 revealing: "[a]t C4-C5 and C5-C6, shallow central disk herniation produces indentation in the ventral thecal sac. Canal and foramina are patent;" and [a]t C6-C7, broad-based disk herniation is seen associated with an osteoarthritic ridge component, produces indentation in the ventral thecal sac. There is mild-to-moderate foraminal narrowing. Uncovertebral joint hypertrophy continues." (R. 1050).

- Electrodiagnostic study by Dr. Diamond dated October 1, 2010 revealing virtually identical results as February 15, 2008.[7]

*See* Certification of John J. Rachinsky, Esquire in Support of Plaintiff's Initial Brief for Review of a Final Decision of the Social Security Commissioner dated January 5, 2017 ("Rachinsky Certification" or "Rachinsky Cert."), Exs. C–I and N–O.[8]

## V.  DISCUSSION

### A.  Sentence Six Remand.

Plaintiff contends that remand is warranted under Sentence Six of 42 U.S.C. § 405(g) based on additional evidence relating to Plaintiff's alleged neck, back, hand, and shoulder impairments that was not before the ALJ but was considered by the Appeals Council. When a claimant seeks to rely on evidence that was not presented to the ALJ, a district court may remand the case if the claimant can demonstrate that (1) the evidence is new, (2) good cause exists for not presenting the

---

[7] The Court has been unable to locate this document in the administrative record.

[8] Local Civil Rule 9.1 requires briefs to include references to the administrative record. Plaintiff's citations to the Rachinsky Certification without a reference to the administrative record resulted in a needless expenditure of judicial resources. Plaintiff's counsel is cautioned to follow the Local Rules of this Court in all future submissions.

evidence to the ALJ in a timely manner, *and* (3) the evidence is material.  *See Matthews v. Apfel*, 239 F.3d 589, 592-92 (3d Cir. 2001); *Strelec v. Colvin*, No. 5-cv-3010 (JLL), 2016 WL 2736103, at *8 (D.N.J. May 11, 2016).  Plaintiff bears the burden of demonstrating that all three requirements are satisfied.  *See Szubak v. Sec'y of Health and Human Services*, 745 F.2d 831, 833 (3d Cir. 1984). The Court finds that remand is not warranted because Plaintiff fails to meet her burden as to any requirement.

### 1.    New.

New evidence in this context refers to material that was neither "in existence or available to the claimant at the time of the administrative proceeding" (*Sullivan v. Finklestein*, 496 U.S. 617, 626 (1990)) nor "merely cumulative" of the evidence before the ALJ (*Szubak*, 745 F.2d at 833). The Court rejects Plaintiff's reliance on *Szubak* as to this requirement.  *See* ECF No. 8 at 7 (citing Rachinsky Cert. at ¶¶ 17-18).  Plaintiff correctly describes the Third Circuit's holding in *Szubak* that the proffered medical reports were "clearly new in the sense that they were compiled after the [Commissioner's] first decision, and therefore they could not have been presented at the hearing." 745 F.2d at 833 (citing *Ward v. Schweiker,* 686 F.2d 762, 764 (9th Cir. 1982).  However, Plaintiff assumes that *Szubak*, like this case, involved proffered evidence that was *created before* the ALJ's decision but subsequently retrieved.  *See* Rachinsky Cert. at ¶¶ 16, 18 (explaining that, at some point after February 2015, new counsel personally retrieved a copy of Plaintiff's file from her prior counsel containing existing medical evidence not previously presented to the ALJ).[9]  Although the *Szubak* decision does not specifically address this issue, the case cited by the Third Circuit for its

---

[9] Although Plaintiff's counsel also asserts that he does "not recall seeing any of the medical reports regarding Hiriam Rangel attached hereto as Exhibits C through L" (*id*. at 18), the Court notes that Exhibits J–L to the Rachinsky Certification were included in the administrative record before the ALJ as part of Exhibits 13F and 15F (*see* R. 352-53, 363-67, 369-70).

holding unambiguously explained that "[t]he additional medical evidence, on its face, shows that it was made *after* the [Commissioner's] final decision, and therefore could not have been presented at the hearing." *Ward*, 686 F.2d at 764 (emphasis added). Plaintiff's proffered evidence was all created before the ALJ issued his decision (in some cases more than two decades) and could have been presented to him before the record closed. The Court therefore finds that Plaintiff's proffered evidence was not new.

### 2.    Good Cause.

Plaintiff asserts that, having met with prior counsel in advance of the ALJ hearing and advised him of her complete medical history including treating providers, she "had a reasonable expectation" that prior counsel would submit the evidence now proffered. ECF No. 8 at 10 (citing Rachinsky Cert. Ex. B (Affidavit of Hiriam Rangel in Support of Plaintiff's Brief for Review of a Final Decision of the Social Security Commissioner, dated January 5, 2017 ("Rangel Affidavit" or "Rangel Aff.")) ¶¶ 4, 8-9.) Specifically, Plaintiff argues:

> [H]ad the Plaintiff been aware that these records were not submitted she could have questioned her prior counsel on the omission, demanded the records' inclusion or had the opportunity to seek other counsel. Plaintiff relied upon counsel to her detriment thereby establishing good cause.

ECF No. 8 at 11 (citing Rangel Aff. ¶ 9).

The Court disagrees for the reasons recently explained by the Third Circuit in *Chalfant v. Commissioner of Social Security*:

> [Claimant's] primary argument is that his previous counsel failed to submit various medical records to the ALJ. Counsel's alleged negligence, however, does not state a basis for relief in this context. *See Pitts v. Shinseki*, 700 F.3d 1279, 1284-86 (Fed. Cir. 2012) (collecting cases involving "claimants seeking federal benefits"); *see also Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007) ("[A] claimant represented by counsel is presumed to have made his best case before the ALJ[.]"); *Walker v. Sun Ship Inc.*, 684 F.2d 266, 268-69 (3d Cir. 1982) (rejecting argument that counsel's alleged negligence should not be imputed to the client in agency proceeding).

16

737 F. App'x 625, 627-28 (3d Cir. Jun. 19, 2018), *petition for cert. filed*, No. 18-7535 (U.S. Jan.

12, 2019); *see Levesque-Cerka v. Astrue*, No. 06-cv-6025 (SRC), 2008 WL 699588, at *8 (D.N.J.

Mar. 12, 2008) ("Attorney miscalculation does not fall within the bounds of good cause, as

demonstrated by the Third Circuit's reasoning in *Matthews,* where a major concern was preventing

plaintiffs from withholding evidence as a means to obtain a rehearing at a later date, if needed.")

(citing *Matthews,* 239 F.3d at 595); *accord Morales v. Colvin*, No. 13-cv-229J, 2015 WL 1507844,

at *4 (W.D. Pa. Mar. 31, 2015) ("The court does not believe that plaintiff's dissatisfaction with

her prior counsel constitutes adequate good cause for a remand in this case.").[10]

      The Court also rejects Plaintiff's reliance on *Szubak* as to this requirement.  *See* ECF No.

8 at 11-12 (citing Rachinsky Cert. at ¶¶ 17-18).  Plaintiff correctly describes the Third Circuit's

conclusion in *Szubak* that a remand "presents little danger of encouraging claimants to seek after-

acquired evidence, and then to use such evidence as an unsanctioned 'backdoor' means of appeal."

*Id*., 745 F.2d at 834 (citation omitted).  However, Plaintiff ignores the basis for that conclusion –

namely, that new counsel obtained "further material evidence" after the ALJ's decision because

an "ambiguous" report from a consultative examining provider was ascribed "great weight by the

ALJ."  *Id*.  This case is distinguishable both because the consultative examiners and reviewing

consultants were unambiguous in their opinions and because, as explained below, the proffered

evidence is not material.

      **3.**      **Material.**

      Evidence is material in this context when it "relate[s] to the time period for which benefits

were denied;" "does not concern evidence of a later acquired disability or of the subsequent

---

[10] The Court need not decide whether Plaintiff's prior counsel was negligent in failing to introduce 600+
pages of evidence that long preceded both the initial and amended alleged onset dates.

deterioration of a previously non-disabling condition;" and "there is a reasonable possibility that

the new evidence would have changed the outcome of the [Commissioner's] determination."

*Szubak*, 745 F.2d at 833. Plaintiff argues that the proffered evidence satisfies this requirement

because:

> The new evidence is dated within the timeframe of Plaintiff's alleged disability
> onset date and before the ALJ hearing date of October 16, 2014. (Exhibits C-I, N-
> O) Therefore, the new evidence does not concern evidence of a later acquired
> disability or of subsequent deterioration of a previously non-disabling condition.
> … The ALJ stated in his decision that: with respect to claimant's spinal impairment
> the requirements of Listing 1.04 have not been met because the evidence fails to
> demonstrate the existence of a herniated nucleus pulposis, … osteoarthritis,
> degenerative disc disease, facet arthritis or vertebral fracture which results in the
> compromise of a nerve root or the spinal cord. The ALJ also noted that the record
> was devoid of any clinical findings to contradict the findings of the consultative
> examinations. If remanded the ALJ would have the evidence of herniated discs and
> degenerative disc disease he sought.

ECF No. 8 at 8-9 (citing R. 4, 8-9). Although the Court agrees that the proffered evidence does

not concern evidence of a later acquired disability or of the subsequent deterioration of a previously

non-disabling condition, the remainder of Plaintiff's argument is fatally flawed in two respects.

First, the ALJ found that Plaintiff was not disabled during the period between her amended

alleged onset date of May 25, 2012 and the decision date of December 16, 2014. The proffered

evidence was created during, and relates to, the period between 1997 and 2010. Thus, the proffered

evidence does not relate to the relevant period for which benefits were denied; nor does it even

relate to Plaintiff's initial alleged onset date of September 1, 2011.

Second, there is no reasonable possibility that the proffered evidence would have changed

the ALJ's finding at Step Three as to Listing 1.04. Listing 1.04 provides:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal
> stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture),
> resulting in compromise of a nerve root (including the cauda equina) or the spinal
> cord. With:

A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

OR

B.  Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

OR

C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in an inability to ambulate effectively, as defined in 1.00 B2b.

POMS DI 34121.011, Listing 1.04; *see id*., Listing 1.00 B2b ("Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.").[11]  The ALJ found that "[w]ith respect to the claimant's spinal impairments, the requirements of [L]isting 1.04 have not been met because the evidence fails to demonstrate the existence of a 'herniated nucleus pulposis, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture; which results in the compromise of a nerve root or the spinal cord along with the requirements of A, B, or C of this [L]isting."  (R. 19.)  Plaintiff is correct that one or more of the proffered diagnostic imaging reports demonstrates the existence of herniated discs and/or degenerative disc disease.  But as the ALJ explained, consultative examiner Dr. Rambhai C. Patel (internal medicine) reported on August 3, 2012, "the

---

[11] The Court analyzes all Listing criteria, as did the ALJ, as of the ALJ's decision date.  The applicable criteria for Listing 1.04 are described in Social Security Administration Program Operations Manual System ("POMS") DI 34121.011, Musculoskeletal Listings from 06/16/2008 to 09/28/2016, available at http://policy.ssa.gov/poms.nsf/lnx/0434121011.

claimant walked with a normal unassisted gait and she had a full range of motion throughout with no evidence of tenderness, deformity or sensory, neurological or gross motor deficits."  (R. 22 (also noting that spinal X-rays ordered by Dr. Patel were normal); *see* R. 336-43.)  The ALJ also explained that consultative examiner Dr. Ernesto L. Perdomo (psychologist) observed on August 7, 2012 "that the claimant walked with a normal gait."  (R. 23; *see* R. 344-47.)  Plaintiff points to no proffered evidence contradicting the record evidence that she failed to satisfy all Paragraph A, B, or C criteria for twelve consecutive months during the relevant period.

The Court therefore finds that Plaintiff's proffered evidence is not material and that remand is not warranted under Sentence Six of 42 U.S.C. § 405(g).

### B.    Record Investigation/Development.

Plaintiff also contends that remand is warranted under Sentence Four of 42 U.S.C. § 405(g) because the ALJ erred by failing "to further investigate and/or develop the record based on statements contained in the records of Doctor[] Rodriguez and [PA] Soliman which were in the evidence at the hearing."  ECF No. 8 at 13; *see id.* at 14 (noting that ALJ's decision acknowledged and discussed the 3 cited treatment records).  The specific statements on which Plaintiff relies are noted in italics below:

- Progress Note dated April 3, 2013 from Maria Soliman (physician assistant) advising that Plaintiff:  presented for disability paperwork; complained of arthritis pain to bilateral lower extremities, diffuse myalgias, neck and back pain secondary to disc herniations, and bilateral upper extremity paresthesias for many years, worsening over the past 2 years; *was treated by different specialists for her musculoskeletal complaints*; and *was instructed to follow-up with a specialist*.  (R. 352-53 (emphasis added).)

- Examination Report dated August 8, 2014 from PA Soliman advising that Plaintiff was unable to work due to fibromyalgia/chronic pain, dizziness, joint pain, and herniated discs – cervical/lumbar, all *with an onset date of July 3, 2012*.  (R. 369-70 (emphasis added).)

- Physical Residual Functional Capacity Questionnaire (undated) from Dr. Ricardo Rodriguez (internal medicine) advising that Plaintiff:  was permanently disabled

due to fibromyalgia/chronic pain, cervical/lumbar herniated discs, joint pains, dizziness, and hemorrhoid pain; had no clinical findings and objective signs, as her most recent physical exam was normal and her rectal exam was deferred; and *was referred at her last office visit on January 9, 2014 to a spinal specialist/neurologist* and also prescribed Flexural.  (R. 363-67 (emphasis added).)

Plaintiff asserts that "the existence of disc pathology" is "an element of Listing 1.04" at Step Three and "[could] be reasonably expected to corroborate the Plaintiff's subjective complaints of pain and limitation" at Step Four.  ECF No. 8 at 14.  Plaintiff argues:

> Based on the statements contained in the records of Doctors Rodriguez and Soliman that Plaintiff suffers from herniated discs and that she has been referred to and treated with spinal specialists and the obvious lack of any proffered records from a spinal specialist by prior counsel the ALJ should have requested additional medical records or held another hearing to receive testimony from the spinal specialist to develop a full record.  Plaintiff was [sic] several orthopedic specialists whose treatment was before the hearing date and whose records could have been proffered to the ALJ [citing Rangel Aff. ¶ 8].  Such was not done in this case and warrants the remand of this case to the ALJ for further development of the record regarding Plaintiff's spinal issues.

ECF No. 8 at 15.  The Court disagrees.

Notwithstanding that Plaintiff was apparently referred in 2013 and 2014 by Dr. Rodriguez and PA Soliman to specialists for her musculoskeletal impairments, Plaintiff points to no evidence that she was treated by any such specialist during the relevant period between May 25, 2012 (amended alleged onset date) and December 16, 2014 (ALJ's decision date).  Plaintiff also does not explain how old orthopedic treating records – with some dating as far back as 1992 – contradict the record evidence cited in the ALJ's Step Three findings that Plaintiff failed to satisfy Listing 1.04 *during the relevant period*.[12]  Nor does Plaintiff explain how these old records contradict the

---

[12] Plaintiff's brief cites to the following section from her affidavit:

> I was unaware prior to receipt of the unfavorable decision that prior counsel did not offer into evidence the treating records of Dr. William Martin concerning my 1992 motor vehicle accident in which I injured my back and neck; the medical records from my March 1997 work related injury including the operative report from decompressive arthroplasty of my left shoulder; the June 2008 operative report of Dr. Barmakian for right carpal tunnel release as well as his diagnosis of

record evidence cited in Plaintiff's Step Four finding that "her subjective complaints of pain are far in excess of what could reasonably be expected from her activities of daily living, medical condition, and the objective medical evidence" *during the relevant period*. (R. 25.) Thus, any failure by the ALJ to further investigate or develop the record as to Plaintiff's musculoskeletal impairments based on the 3 cited treatment records of Dr. Rodriguez and PA Soliman was harmless.

Plaintiff's reliance on *Reefer v. Barnhart*, 326 F.2d 376 (3d Cir. 2003) is misplaced. *See* ECF No. 8 at 13-14. In *Reefer*, the claimant had been receiving SSI benefits since March 1989 when the Commissioner issued a notice of disability cessation effective in May 1997 because her impairments had improved to the point that she was no longer disabled. The *Reefer* claimant appeared pro se during a hearing held in 1998 that last only twenty minutes. She testified that she had suffered a stroke in 1997 and provided the ALJ with the names of her two treating cardiologists. At the end of the hearing, the ALJ stated that he would obtain additional medical records and, if necessary, would call for another hearing. However, the ALJ issued his decision – which did not even mention the claimant's stroke – without the benefit of a second hearing and without requesting testimony from either of the claimant's treating cardiologists. *See Reefer*, 326 F.3d at 378, 380. The Third Circuit held that the ALJ committed reversible error both by not following up on the claimant's testimony about her stroke, "an occurrence of obvious relevance to this disability determination," and by not posing any questions "that would enable him to make []

---

deQuervain's tendonitis. I also treated throughout 2000 with Dr. Ralph Sweeney whose records were not moved into evidence regarding my neck and back pain, nor were the orthopedic treating records of Dr. George Weber, Edison-Metuchen Orthopedics or Union County Orthopedics with whom I treated with before the hearing date.

Rangel Aff. at ¶ 8; *see* ECF No. 8 at 15. All this evidence was created well before Plaintiff's May 25, 2012 (amended alleged onset date). (*See* R. 632-680 & 786-987 (indicating that Plaintiff's treatment at Edison-Metuchen Orthopedics and Union County Orthopedics ended by 2009).)

a credibility determination" about the claimant's subjective symptoms.  *Id*. at 380 (noting that ALJ did not ask claimant about "her daily activities and limitations, how much she can lift, how far she can walk, how long she can sit or stand without discomfort, or whether she has difficulty concentrating").  Unlike the *Reefer* claimant, Plaintiff never identified any additional treating provider during the relevant period and was questioned extensively during the hearing by both her prior counsel and the ALJ about her subjective symptoms and functional limitations during the relevant period.

The Court therefore finds that remand is not warranted under Sentence Four of 42 U.S.C. § 405(g).

## V.    CONCLUSION

For these reasons, the Court affirms the Commissioner's decision that Plaintiff was not disabled as set forth in the accompanying Order.


Dated:  February 1, 2019                    _____s/ Paul A. Zoss_____
At Newark, New Jersey                    PAUL A. ZOSS, U.S.M.J.